## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HWANG LAW FIRM, LLC, | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| v. | : | **NO. 07-2973** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| **Defendant** | : | |

### M E M O R A N D U M

**STENGEL, J.**                                                 July  9  , 2008

The sole legal issue presented on summary judgment in this wrongful levy action

is whether or not the plaintiff, Hwang Law Firm, is a successor or alter ego to Hwang &

Associates for tax liability purposes.  After careful review of the facts and the governing

law on successor liability, and consistent with the following discussion, I find that Hwang

Law Firm is liable as a successor to Hwang & Associates.  Accordingly, I will grant the

motion for summary judgment of the United States.

### I.    BACKGROUND

Hwang Law Firm, LLC ("HLF") brought this action to recover for allegedly

wrongful levies by the U.S. Internal Revenue Service ("IRS") on HLF's operating and

escrow accounts (the latter being designated as the IOLTA, or "Interest on Lawyer's

Trust Account," which contained funds belonging to clients).  The plaintiff also disputes a

Notice of Federal Tax Lien filed against it in the Court of Common Pleas of Montgomery

County, Pa.  HLF contends that the levy and lien were based on the incorrect premise that

HLF is liable for past due taxes assessed against another law firm, Hwang and Associates

("H&A").

Samuel Y. Hwang, a Pennsylvania attorney, was the sole shareholder and an employee of H&A, which primarily engaged in defense of Lemon Law claims and employed 5-7 attorneys and 4-6 support staff. Hwang started the firm as Hwang & Joffe in 1984, changing its name to Hwang & Associates one year later, when Mark Haas joined the firm. Later, when Robert Nix joined the firm, the name temporarily changed again, to Hwang & Nix, P.C., only to change back to Hwang & Associates, P.C. in the mid-nineties. At this point, the firm had between seven and eleven attorneys and focused primarily on litigation (approximately 65 to 70 percent), with some transactional work as well (approximately 30 to 35 percent). Sam Hwang was the president, shareholder, and sole director of H&A. He and Mr. Haas "primarily focused on transactional work" at H&A.

In 2001-02, H&A began to experience financial difficulties due at least in part to loss of major business clients. On December 31, 2002, H&A concluded operations, but did not formally dissolve. Upon cessation of operations, H&A owed a substantial liability to the IRS, consisting principally in unpaid employment taxes.

In November 2002, approximately two months before H&A ceased operations, Hwang began a new practice, the plaintiff, HLF, which engages primarily in transactional work, including counseling small businesses in commercial and real estate related matters. The firm employs only 2 attorneys (Hwang and Haas) and 1 part-time support

2

staff.  After a few months of overlap of one or two clients, no large clients from H&A

continued to be represented by HLF.  Unlike H&A, HLF's litigation matters comprise

only about 10 percent of its activities.  For a few months during the transition period,

H&A and HLF bank accounts overlapped, because vendors "needed to be paid out of

H&A accounts."  (See Hwang Dep. 48.)

There was no stock transfer between the two entities; H&A ceased business, but

has never dissolved or formally transferred stock ownership to HLF.  HLF uses a few

rooms of H&A's former office complex as a workspace, subletting the remaining rooms.

The lease for this space was never formally transferred to HLF.  The two firms also have

the same telephone and fax numbers.  HLF uses office equipment (desks, chairs,

computers, etc.), technically belonging to H&A, without paying for it.  Indeed no assets

of H&A were ever sold to anyone.  Client contracts were assumed by HLF, and H&A's

client files were transferred to HLF without payment.  HLF operated under H&A's

malpractice insurance until May 28, 2003, listing H&A as a "predecessor firm."  On its

application for malpractice insurance thereafter, HLF claimed to have had "continuous

coverage since approximately 1986."

Hwang's daily activities also did not change significantly, and neither Hwang nor

Mark Haas needed to learn new areas of law after HLF began its practice.  In the case of

both firms, Hwang was the sole owner, officer, director and stockholder, with the ultimate

authority in both H&A and HLC on which vendors to use.  HLF uses the same outside

3

accountant, Jerry Dicht, and the same outside payroll service, that H&A had before its demise. Even as late as the end of 2003, H&A was listed as the payor on checks issued by HLF. Through February 2003, H&A paid HLF staff, while HLF attorneys were paid by HLF.

On January 4, 2003, Hwang met with Revenue Agent Kerry Martin, in an attempt to resolve the outstanding tax obligation. HLF alleges, and the United States denies, that the agent indicated that payment of the trust fund portion would be accepted as full settlement of H&A's obligation. According to HLF, Hwang then arranged to obtain a loan secured by his home in order to pay the trust fund portion. HLF claims that Hwang made several attempts to obtain a pay-off letter to secure the loan without receiving a response from the agent or any other IRS representative.

Instead, on April 27, 2007, the agent sent a Notice of Levy to HLF, as the "successor and alter ego" of H&A. On the same date, the agent issued a levy against HLC's bank accounts at Commerce Bank, resulting in a payment of $12,604.61 from HLC's operating account. On June 13, 2007, the levy restrained more than $60,000 in HLC's escrow account, containing only clients' funds. Finally, on June 21, 2007, the agent filed a notice of tax lien against HLC in Montgomery County.

On July 5, 2007, pursuant to an agreement between HLC's attorney and the agent, Hwang gave the agent a cashier's check for $150,000 and the agent released the levy against HLC's escrow account. However, the agent directed HLC to initiate this 24

4

U.S.C. § 7426(a)(1) action, advising that if it did not, collection efforts would continue.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to

5

that party's case, and on which that party will bear the burden of proof at trial." Celotex

Corp. v. Catrett, 477 U.S. at 322.  Under Rule 56, the court must view the evidence

presented on the motion in the light most favorable to the opposing party.  Anderson v.

Liberty Lobby, Inc., 477 U.S. at 255.  The court must decide not whether the evidence

unmistakably favors one side or the other but whether a fair-minded jury could return a

verdict for the plaintiff on the evidence presented.  Id. at 252.  If the non-moving party

has exceeded the mere scintilla of evidence threshold and has offered a genuine issue of

material fact, then the court cannot credit the movant's version of events against the

opponent, even if the quantity of the movant's evidence far outweighs that of its

opponent.  Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363

(3d Cir. 1992).

## III.   DISCUSSION

"It is well-settled that a successor corporation or an alter ego corporation may be

held liable for the tax debt of the predecessor corporation."  Ross Controls, Inc. V. Dep't

of Treasury, 164 B.R. 721, 726 (E.D. Pa. 1994).

State law governs questions of successor liability.  See Philadelphia Electric Co. v.

Hercules, Inc., 732 F.3d 303, 310 (3d Cir. 1985); Fiber-Lite Corp. v. Molded Acoustical

Products of Easton, Inc., 186 B.R. 603, 608 n.3 (E.D. Pa. 1994).  There is no dispute that

Pennsylvania law should apply to resolve the present case.  The general rule of successor

liability shields firms that buy assets from another firm from the liabilities of the

transferor.  See, e.g., Berg Chilling Systems, Inc. v. Hull Corp., 435 F.3d 455, 464 (3d

Cir. 2006); Fiber-Lite Corp. v. Molded Acoustical Products of Easton, Inc., 186 B.R. 603,

607-08 (E.D. Pa. 1994).  Pennsylvania recognizes five exceptions to the general principle

that a successor will not be liable for the debts of its predecessor firms.  See generally,

George W. Kuney, Successor Liability in Pennsylvania, 78 Pa. Bar Ass'n Q. 160, 161-64

(2007) (discussing the evolution of Pennsylvania's "six species" of successor liability,

including of the product line exception).

The United States claims that Hwang Law Firm, LLC is both a successor and an

alter ego to the tax payer, Hwang & Associates.  HLF denies liability under both theories.

Based on the following discussion, I will grant summary judgment in favor of the United

States.

A.      Successor Liability under the Continuity Exception

Pennsylvania courts generally note that the continuity of ownership and *de facto*

merger exceptions to successor non-liability are "interrelated if not completely conflated."

Id. at 162; see also Fiber-Lite Corporation v. Molded Acoustical Products of Easton, Inc.,

186 B.R. 603, 608 (E.D. Pa. 1994), aff'd mem. 66 F.3d 310 (3d Cir. 1995) ("[T]he

continuity exception is actually subsumed by the *de facto* merger exception") (citing Atlas

Tool Co., Inc. v. C.I.R., 614 F.2d 860, 871 (3d Cir. 1980) and Polius v. Clark Equipment

Co., 802 F.2d 75, 77 (3d Cir. 1986)); Lavelle v. Lavco, Inc., 555 A.2d 218, 227 (Pa.

Super. Ct. 1989) (noting that "the two theories are difficult to distinguish"); Berg Chilling

Sys., Inc. v. Hull Corp., 435 F.3d 455 (3d Cir. 2006) (applying the same four-factor test to determine "whether a transaction is a *de facto* merger <u>or</u> continuation") (emphasis added).

"[A] mere continuation occurs where a new corporation is formed to acquire the assets of an extant corporation, which ceases to exist." <u>Cont'l Ins. Co. v. Schneider, Inc.</u>, 810 A.2d 127, 134 (Pa. Super. Ct. 2002) (citations omitted); <u>Berg</u>, 435 F.3d at 455. The defining elements for application of the continuity exception are identity of officers, directors, or shareholders, and the existence of a single corporation following the transfer. <u>Cont'l Ins. Co</u>, 810 A.2d at 134-35 (citations omitted); <u>Dawejko v. Jorgensen Steel Co.</u>, 434 A.2d 106, 108 (Pa. 1981) ("Traditionally, a case has been held within the 'continuation' exception only when there is a common identity of officers, directors and stock between the selling and purchasing corporations, and only one corporation after the transfer.") More recently, "continuation has been defined more broadly, the emphasis being shifted from corporate formalities to an inquiry regarding the nature of the business operations." <u>Id</u>.

Meanwhile, the *de facto* merger exception applies if, on balance, certain non-dispositive factors weigh in favor of assigning liability: (1) continuity of ownership; (2) cessation of the ordinary business by, and dissolution of, the predecessor as soon as practicable; (3) assumption by the successor of liabilities ordinarily necessary for uninterrupted continuation of the business; and (4) continuity of the management, personnel, physical location, and the general business operation." <u>Cont'l Ins. Co</u>, 810

A.2d at 134-35.  For either exception to apply, in the most recent Third Circuit case on

the matter (decided after <u>Cont'l Ins. Co.</u>) the court looked for the following four factors:

> (1)   There is a continuation of the enterprise of the seller corporation, so that there is continuity of management, personnel, physical location, assets, and general business operations.
>
> (2)   There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.
>
> (3)   The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.
>
> (4)   The purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

<u>Berg</u>, 435 F.3d at 468-69 (citing <u>Philadelphia Electric Co.</u>, 762 F.3d at 310).

    The court in <u>Berg</u> emphasized the continuity of ownership (criterion II, above) as

"critical to a successful successor liability claim under Pennsylvania law," particularly as

interpreted by the district courts.  <u>Berg</u>, 435 F.3d at 468 (citing <u>Forrest v. Beloit Corp.</u>,

278 F. Supp. 2d 471, 477 (E.D. Pa. 2003).  The most recent Pennsylvania court applying

the *de facto* merger or continuity exception, in <u>Cont'l Ins. Co.</u>, did not treat continuity of

ownership as an "essential element," but also "did not take the opportunity to disagree

with the District Courts."  <u>Id.</u> at 469; <u>Cont'l Ins. Co.</u>, 810 A.2d at 134-36.  Without a

"bright-line standard" to follow from the Pennsylvania state courts, the <u>Berg</u> court

"conduct[ed] a full analysis that emphasizes the ownership factor but does not rely on it."

Berg, 435 F.3d at 469.  I will do the same.

Some courts applying the continuation and *de facto* merger exceptions have also

expressed a desire to eschew "corporate formalities," such as the manner in which assets

are acquired, to avoid "elevat[ing] form over substance" in determining whether a

successor should be held liable.  Dawejko, 434 A.2d at 108; Fiber-Lite, 186 B.R. at 608

(citing Polius, 802 F.3d at 78; rejecting the contention that the continuity exception did

not apply where assets were purchased in a foreclosure sale); see also Cont'l Ins. Co., 810

A.2d at 134-36 (holding that purchaser businesses in a sale pursuant to § 9-504 of the

Uniform Commercial Code could be liable as successors to secured debtor under mere

continuation or *de facto* merger exceptions); Kaiser Foundation Health Plan of the Mid-

Atlantic States v. Clary & Moore, P.C., 123 F.3d 201, 205-06 (4th Cir. 1997) (citing

Fiber-Lite with approval and applying a "substance-over-form" analysis where "selling

and buying corporations tried very hard to make the new corporation appear not to be a

successor"); but see Berg, 435 F.3d at 469 (citing Fiber-Lite as the only District Court

applying Pennsylvania law "willing to find liability despite a partial-cash sale").  The

Berg court treated the exceptions "identically" but described the continuation exception's

focus to be "on situations in which the purchaser is merely a restructured or reorganized

form of the seller."  Id. at 468.

With these principles in mind, I now move to a consideration of the four factors

enumerated in Berg, considering the ownership criterion first, as this determination is

accorded significantly more weight than the remaining three factors. See id. at 468.

## 1.    *Continuity of Ownership*

"The objective of the [continuity of stock ownership] requirement is usually to identify situations in which shareholders of a seller corporation unfairly attempt to impose their costs or misdeeds on third parties by retaining assets that have been artificially cleansed of liability." Id. at 469.  The facts of the present case may illustrate why the lingering distinction between the *de facto* merger and mere continuation exceptions persists.  Viewed in terms of strict "corporate formalities," HLF would likely avoid liability for H&A's unpaid employment tax–largely owing to the fact that Mr. Hwang's corporate practices have themselves taken great liberties with corporate formalities.  It is beyond dispute that no stock transfer occurred between H&A and HLF, yet Mr. Hwang is the sole owner, officer, director and stockholder, with the ultimate authority, in both entities.  Lack of stock transfer has been deemed "fatal" to a finding of liability under the *de facto* merger exception.  See id. at 462.  However, in the cases cited by Hwang as decisive on this point, courts have examined both *de facto* merger and mere continuation theories.  See Stutzman v. Syncro Machine Co., Inc. No. 88-9673, 1991 WL 66796, at *4- 5 (E.D. Pa. Apr. 18, 1991); Tracey by Tracey v. Winchester Repeating Arms Co., 745 F. Supp. 1099, 1110-11 (E.D. Pa. 1990).

In Stutzman, the court refused to apply the mere continuation exception, but noted that "[t]he exception is designed to extend liability where the specific purpose of

transferring assets is to put them beyond the reach of the predecessor's creditors."
Stutzman, 1991 WL 66796, at *5. That case, like Berg, involved a purchase of assets for
cash. See id.; Berg, 435 F.3d at 469; see also Tracey by Tracey, 745 F. Supp. at 1111
(examining not only the fact that no transfer of stock ownership occurred, but also the
lack of evidence demonstrating continuity of officers and directors before declining to
extend liability under the mere continuation exception).

   In this case, there is no question that a transfer of assets has occurred, a transfer
that evaded the formalities and transparency of arm's length dealing, not to mention the
substantial debts accumulated by the "seller," H&A. HLF used the same computers,
desks, office supplies, and office location as H&A, under the same lease, with the same
telephone number and fax number. Cf. Kaiser, 123 F.3d at 205 (buttressing continuation
determination with the fact that the new law firm continued in the old firm's offices with
the same telephone number and address). More importantly, H&A client files and client
contacts were assumed by HLF without any formal asset transfer agreement.

   This court must determine if a transfer of assets for seemingly no consideration at
all, where a single individual is owner of both entities, is more akin to an arm's length
asset transfer for cash, or an artificial transfer of ownership for the purpose of evading
liabilities. On the facts presented, I find, as a matter of law, that the latter has occurred in
this case. See Ross Controls v. United States, 160 B.R. 527, 532-33 (applying
continuation exception, despite the "absence of corporate formalities," where one

individual "actively operated" three companies, was the sole shareholder of two, and

"sold" the assets to his daughter for nominal consideration in an attempted estate freeze);

Kaiser, 123 F.3d at 208-09 (finding continuation where transfer of most assets occurred

both directly and indirectly, "for often inadequate consideration," between two law

firms); Philadelphia Electric, 762 F.2d at 311 (citing with approval the court's opinion in

Knapp v. North American Rockwell Corp., 506 F.2d 361 (3d Cir. 1974), where the court

"looked beyond the form" of a transaction characterized as a "sale of assets" to find a *de*

*facto* merger).

     The superficial (and avoidable) lack of a formal transfer of ownership between

H&A and HLF cannot in fairness compromise the strong public policy interest in proper

collection of federal taxes. See Atlas Tool, 614 F.2d at 871 (holding, under New Jersey

law, that "the favored public policy of the collection of the federal revenue" would

likewise favor application of the mere continuation doctrine); Dawejko, 434 A.2d at 110,

citing Knapp, 506 F.2d at 369 ("[Questions] of an injured party's right to seek recovery

are to be resolved by an analysis of public policy considerations rather than by a mere

procrustean application of formalities."). I therefore find that the ownership criterion

weighs in favor of imposing liability. In so holding, I am particularly persuaded by the

Berg court's emphasis that the purpose of the continuity exception is to avoid cases such

as this, where individuals "unfairly attempt to impose their costs or misdeeds on third

parties by retaining assets that have been artificially cleansed of liability." Berg, 435 F.3d

at 469.

## 2. *Continuation of Enterprise*

"Enterprise" encompasses "management, personnel, physical location, assets, and general business operations." Berg, 435 F.3d at 468.  The court in Berg analyzed these aspects on two distinct levels: (1) operations, including use of equipment and location of corporate activities, for example; and (2) corporate management, where the court examined whether the successor had become the "master of corporate destiny" with "authority to bind" the remaining corporate entity after a transfer of assets. Id. at 469-70 (finding that the seller corporation was "extant and master of its own corporate destiny" with "no continuity of corporate management" between buyer and seller corporations party to an Asset Purchase Agreement, which merely "combined operations").

Noting in particular the key element of common directors and officers, I find this factor weighs in favor of imposing liability under the continuity exception. See especially, Cont'l Ins. Co, 810 A.2d at 134-35; see also Kaiser, 123 F.3d at 205 ("The most critical element in proving a continuation is showing the same ownership of the two companies, a common identity of the officers, directors, and stockholders in the selling and purchasing corporation.").

### a. *Continuity of Operations*

Included under the heading of "operations" are such aspects of corporate identity as personnel, physical location, and general business activity. See Berg, 435 F.3d at 468.

14

In <u>Berg</u>, the court found "ample evidence" to support continuation of enterprise in the context of continuity of operations.  <u>See</u> <u>id</u> at 469.  There, the purchasing corporation acquired all of the seller's "equipment and inventory, assumed tenancy of [the seller's] manufacturing facilities . . . , manufactured the same products, took over many contractual obligations, and used the same personnel, telephone number, and fax number."  <u>Id.</u>  Under the continuity of operations heading, HLF mirrors the purchasing corporation in <u>Berg</u> (minus the formality of actually paying for any of the listed assets).  <u>See</u> <u>id.</u>  The evidence shows a sustained overlap in clients, personnel, physical location and telephone number, office supplies, and even malpractice insurance.  Checks written on HLF's bank account through the end of 2003 occasionally listed H&A as the payor, and the HLF staff was paid by H&A through February 2003.

I am not persuaded by HLF's assertion that its business operations are distinguishable from those of H&A simply because HLF engages in primarily transactional work.  The facts show that Sam Hwang began H&A as a small transactional operation and later expanded the firm's litigation practice.  Simply scaling back that litigation practice and re-inventing the firm's specialization cannot cleanse the enterprise of liability.  <u>See</u> <u>Berg</u>, 435 F.3d at 469.

> b.    *Continuity of Corporate Management*

The common identity of officers and directors between two corporate entities is a "defining element[] for application of the continuity exception."  <u>Cont'l Ins. Co</u>, 810 A.2d

at 134-35. Continuity of corporate management entails that common corporate officers have the power to bind both the predecessor and continuing corporate entities. Berg, 435 F.3d at 470.

In Ross Controls, Mr. Ross retained control at all times, "actively operating" the three relevant companies, despite fictional changes in corporate structure and even corporate ownership. See Ross Controls, 160 B.R. at 532-33. The Ross court summarized the relevant facts as follows:

> Mr. Ross re-incorporated the liquidated Milross corporation under its trade name the Milton Ross Co. He was the sole officer and shareholder of both companies. Subsequently, on the advice of his attorney, he attempted an estate freeze of this asset by "selling" the re-incorporated company. The sole shareholder of the purchaser is his grown daughter who lives and works in California and who has no involvement with the business. The only "payment" on this purchase to date has been the transfer of $1,000 written on the Milton Ross Co. account.

Id. In finding that liability should attach under the continuity exception, the court in Ross was persuaded by the paramount role that Mr. Ross played in orchestrating changes corporate form and operation, and found the corresponding "absence of corporate formalities" to support extension of liability. Id.; see also Kaiser, 123 F.3d at 205-06 (finding continuity of management where one director of the predecessor law firm retained his management position, and the same director also became the sole officer and director of the successor firm).

Mr. Hwang, like Mr. Ross, is the defining figure throughout the history of both H&A and HLF. Hwang exercised ultimate authority over both firms on a day-to-day

16

basis. See Ross Controls, 160 B.R. at 532. Hwang's daily activities did not change in the transition from H&A to HLF. As the sole director and owner of HLF, he retains ultimate authority to make decisions related to vendors and employment.

Both inquiries under the continuity of enterprise factor weigh in favor of applying the continuation exception to hold HLF liable for H&A's unpaid federal taxes.

### 3.   *Cessation of Business*

"The *de facto* merger doctrine recognizes that an essential characteristic of a merger is that one corporation survives while the other ceases to exist." Berg, 435 F.3d at 470; see also Dawejko, 434 A.2d at 108 (acknowledging that the continuation exception traditionally contemplates "only one corporation after the transfer").

There is no dispute that H&A ceased all operations in November 2002; it was never formally dissolved. Besides a two-month period in 2002, HLF and H&A never operated during the same time period, though clients, bank accounts and personnel overlapped at least through 2003. This factor therefore weighs in favor of applying the continuation exception in this case.

### 4.   *Assumption of Obligations*

The fourth factor looks to whether the purchasing corporation "assumed the obligations ordinarily necessary for uninterrupted continuation of normal business operations." Berg, 435 F.3d at 470. HLF argues that the record is devoid of evidence that it took on H&A's obligations, claiming that H&A's bank accounts remained open "in

17

order to pay H&A's obligations" through early 2003.  (See HLF Opp'n Br. 8.)  On the contrary, HLF took over H&A's lease and malpractice insurance contract, some of H&A's clients, and seamlessly continued H&A's relationship with outside service providers such as H&A's accountant and payroll service.

Considered cumulatively, the balance of the evidence on each factor persuades me that liability may properly be imposed in this case, consistent with the purpose of the continuity exception.  See Berg, 435 F.3d at 469.  I find that HLF is a continuation of H&A and ought to be liable for H&A's unpaid tax obligations.  Therefore, HLF cannot maintain its wrongful levy action against the United States as a matter of law, and judgment is entered in favor of the United States.

B.      Alter Ego

Having found that the continuation exception applies in this case, and that HLF is liable as a successor to H&A, it is unnecessary to engage in an analysis of the alter ego theory.

IV.    CONCLUSION

HLF is a continuation of H&A under Pennsylvania's successor liability doctrine, and therefore HLF cannot maintain its action for wrongful levy.  An appropriate Order follows.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HWANG LAW FIRM, LLC,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 07-2973** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Defendant** | : | |

### O R D E R

**STENGEL, J.**

      **AND NOW**, this $9^h$ day of July, 2008, upon consideration of the United States' Motion for Summary Judgment, it is hereby **ORDERED** that the motion is **GRANTED**.

      The Clerk of the Court is directed to mark this case **CLOSED** for all purposes.


                BY THE COURT:

                _____
                LAWRENCE F. STENGEL, J.